UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WESLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:12CV1831 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Movant Michael Wesley brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Wesley was sentenced to 476 months imprisonment following his conviction by a jury of two counts of bank robbery and two counts of brandishing, using, or carrying a firearm in furtherance of a crime of violence. Criminal Case No. 4:09CR348 CDP. His conviction and sentence were affirmed on appeal. *United States v. Wesley*, 648 F.3d 640 (8th Cir. 2011).

As grounds for his § 2255 motion, Wesley raises one claim of ineffective assistance of counsel and one claim of prosecutorial misconduct. Because the record affirmatively refutes Wesley's claims, I will deny the motion without a hearing.

Wesley also brings a motion for default, alleging that the response brief of the United States was filed untimely and that he did not receive a copy of that

brief. As Wesley was not prejudiced by the government's untimely filing, I will deny the motion.

## I. Factual Background

On March 6, 2009, three masked men robbed a Commerce Bank branch in University City, Missouri. One man in a ski mask, later determined to be Ura Clerk, entered and announced, "This is a robbery, people, get your hands up." He then ran to the counter, jumped on it, and pulled out a gun. Two other men, later identified as Shamir Houston and movant Michael Wesley, followed him, also wearing ski masks and holding weapons, and ordered the bank employees to the ground. Clerk began removing money from the teller's drawers, taking over $10,000. The three robbers left because they thought a teller triggered the alarm system. The bank surveillance cameras captured the events, and bank employees were able to describe the clothing and general build of the robbers.

On March 26, 2009, two masked men, later identified as Wesley and Houston, robbed a Bank of America branch in Clayton, Missouri. Houston directed the employees to kneel down on the floor in the lobby. Wesley, holding a gun and wearing a blue ski mask, went to the vault area and tried to open the vault door. When he was unsuccessful, he ordered an employee to open it, and Wesley collected over $95,000. The men left and got into a white Monte Carlo driven by Clerk.

The FBI eventually arrested Clerk and Houston for the robberies, based on tips from several confidential informants. Both men gave statements to the FBI about their participation. They claimed that "O.G." was the other person involved, and that he was the robber in the blue ski mask at Commerce Bank and the robber that forced his way into the bank vault at Bank of America. Based on this information and phone records between Wesley, Clerk, and Houston, the FBI obtained a search warrant for Wesley's apartment.

The search warrant was executed on May 16, 2009. Officers seized a blue ski mask, $14,000, a bank money wrapper, and various items of clothing. They also searched Wesley's car on May 18, 2009, and they recovered a gold watch, an automatic pistol, and several receipts. Based on this information, the government charged Wesley with two counts of bank robbery and two counts of brandishing, using, or carrying a firearm in furtherance of a crime of violence.

Around the same time, the FBI was investigating a third robbery at a Regions Bank in Fairview Heights, Illinois, that occurred on May 11, 2009. One robber wearing a blue ski mask and carrying a bag and a gun went over the counter, took a bag of money, and then exited the bank. Based on the evidence that was seized in the search warrants above, Wesley was also charged with that

robbery in the Southern District of Illinois, and those charges remained pending for the duration of Wesley's proceedings in this court.[1]

## II. Procedural Background

I held a pretrial hearing with both parties on April 28, 2010, to discuss the admissibility of certain evidence. The government sought to admit evidence of prior bank robberies committed by Wesley in 1992, as well as the May 11, 2009 bank robbery in Fairview Heights, under Federal Rule of Evidence 404(b). I excluded evidence of Wesley's prior bank robbery convictions, but I allowed admission of the Illinois robbery as evidence of plan and identity. However, I warned the government that it must connect the evidence of the Illinois robbery to these charged robberies in Missouri, or else I would instruct the jury to disregard that evidence.

After the parties filed motions for reconsideration, I held a second pretrial hearing on May 10, 2010. I excluded evidence of the Illinois robbery, as well as any evidence that related solely to the Illinois robbery, such as the money wrapper found in Wesley's basement that had been marked by one of the tellers at the Illinois bank. However, I did not exclude other evidence discovered in the searches of Wesley's home and car – such as the money itself, the ski mask, and

---

[1] Wesley pleaded guilty to one count of bank robbery in the Southern District of Illinois on September 14, 2011. He was sentenced to 96 months imprisonment, to run consecutively to his sentence in this district. *United States v. Wesley*, No. 3:09CR30093 (S.D. Ill. Nov. 21, 2011).

the automatic pistol – as long as the government could demonstrate its relevance at trial to the Missouri charges.

Wesley proceeded to trial in this district on May 12, 2010.  After a two-day trial, the jury found him guilty on all four counts.  On August 24, 2010, I sentenced him to a term of 476 months imprisonment, to be followed by five years of supervised release.

Wesley appealed his conviction and sentence to the Eighth Circuit Court of Appeals.  He raised two arguments on his direct appeal:  (1) the district court abused its discretion when it imposed a sentence of 476 months because it was disproportionate to the sentences of his two co-defendants and the court failed to consider circumstances that would warrant a downward variance; and (2) the district court erred in admitting evidence from the Illinois robbery after explicitly ruling that evidence of the robbery itself was inadmissible.  On August 5, 2011, the Eighth Circuit affirmed Wesley's convictions and sentence.[2]

Wesley timely filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on October 9, 2012. On October 25, 2012, I ordered that the government show cause as to why Wesley's requested relief should not be granted, due by December 9, 2012.  On November 5, 2012, I extended the

---

[2] The Eighth Circuit held that it was an abuse of discretion to admit the $14,000 found in Wesley's home into evidence.  *Wesley*, 648 F.3d at 645-46.  However, because it determined that admission of that evidence did not affect Wesley's substantial rights or the verdict, the court affirmed Wesley's convictions and sentence.  *Id.* at 646-47.

government's response deadline until December 18, 2012. On December 18, 2012, I granted the government's motion for an extension of time and set the response due date at January 5, 2015. Ten days after that deadline, on January 15, 2013, the government filed its response and certified that a copy had been mailed to Wesley. On May 17, 2013, the Clerk of Court mailed a copy of the government's response brief to Wesley in response to his request. Wesley then filed a reply brief.

### III.   Discussion

####   A.   § 2255 Motion

Wesley raises two grounds for relief in his §2255 motion:

1. He received ineffective assistance of counsel for failing to make a motion to strike the firearm from evidence.

2. The government committed prosecutorial misconduct by submitting the firearm into evidence with knowledge that it was not used by petitioner in the charged offenses.

I will not hold an evidentiary hearing on this motion. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citation omitted). Here, as discussed in more detail below, I find that Wesley's claims are either inadequate

- 6 -

or affirmatively refuted by the records and files before me, and I conclude that no evidentiary hearing is required.

## Ground 1: Ineffective Assistance of Counsel

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Wesley must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id*.

Second, Wesley "must show that the deficient performance prejudiced the defense." *Id*. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The court need not address both components if the movant makes an insufficient showing on one of the prongs." *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). As a matter of law, counsel

cannot be ineffective for failing to make a meritless argument.  *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

In Ground 1, Wesley claims that he received ineffective assistance of counsel because his trial counsel failed to move to strike the automatic pistol conditionally admitted into evidence when the government failed to connect the firearm to the charged robberies.  Wesley's trial counsel did thoroughly contest the admissibility of this evidence, even if she did not file a motion to strike at the conclusion of the government's case.  Counsel vigorously objected to the admission of this evidence – as well as other evidence – at two pretrial hearings, immediately prior to trial, and during trial.  After considering both parties' arguments, I allowed the admission of that firearm into evidence at trial.

Wesley also raised this issue on direct appeal, and the Eighth Circuit upheld the admission of the evidence:

> The district court did not err in admitting the automatic pistol. Although the government admits the blue-masked robber appearing in the Missouri surveillance videos carried a revolver – not an automatic pistol – the district court suggested the automatic could have been used by one of the other robbers, leaving the question of the automatic's relevance to the jury.  Wesley says he did not purchase the automatic pistol until after the Missouri robberies and claims "the government admitted that the gun and bag of money were exclusive to the Illinois robbery."  Our review of the record reveals no such unequivocal concession by the government, and neither the government nor the district court were required to believe Wesley's explanation.

*Wesley*, 648 F.3d at 645. Because the Eighth Circuit has held that it was not error to admit this evidence, counsel's performance was not deficient for failing to move to strike it from evidence.

Furthermore, Wesley was not prejudiced by the admission of this evidence. The evidence of Wesley's guilt was overwhelming, even without the admission of this firearm into evidence. The Eighth Circuit summarized this evidence as follows, in relation to its holding that admission of the $14,000 found in Wesley's home was harmless error:

> Video surveillance cameras captured both Missouri robberies. Wesley matches the physical description of one of the robbers seen wearing a blue mask in the video recordings. Two bank tellers identified the blue mask found in Wesley's shared basement as the one worn by the man who robbed them. A teller identified the distinctive purple Stacy Adams shoes found in Wesley's apartment as the shoes worn by one of the robbers. Law enforcement found a gold watch in Wesley's car consistent with a watch visible on the arm of a robber in one of the video recordings. Houston confessed to robbing the banks with Wesley and identified Wesley as the blue-masked man appearing in surveillance videos of both Missouri robberies.

*Wesley*, 648 F.3d at 646. Because Wesley has not demonstrated that the outcome of his trial would have been different had his counsel moved to strike the firearm from evidence, his claim also fails under the second prong of *Strickland*. Because Wesley cannot meet either prong of the *Strickland* analysis, his argument that his counsel was ineffective is without merit, and I will deny relief on Ground 1.

## Ground 2:  Prosecutorial Misconduct

In Ground 2, Wesley argues that the government committed prosecutorial misconduct by seeking to admit the automatic pistol into evidence, having knowledge that the gun was not used in the Missouri robberies.  He alleges that he did not purchase the gun until after the Missouri robberies were committed.  He also alleges that co-defendant Houston gave a report to the FBI stating that Houston used a .9mm semiautomatic handgun in the robberies and Clerk used a .380 semiautomatic handgun, which establishes that none of the defendants could have used the .40 caliber automatic pistol found in Wesley's car in the Missouri robberies, thus rendering it inadmissible.

The Eighth Circuit "has established a two-part test for reversible prosecutorial misconduct:  (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003).  To determine whether misconduct has deprived the defendant of a fair trial, courts analyze three factors: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court." *United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir. 1985).

In this case, Wesley has not established that the government's conduct was improper. As discussed above, both this court and the Eighth Circuit ruled that it was not error to admit the automatic pistol into evidence. The Eighth Circuit made this ruling even considering Wesley's contention that he did not purchase the gun until after the Missouri robberies, explaining that "neither the government nor the district court were required to believe Wesley's explanation." *Wesley*, 648 F.3d at 645. Therefore, the government's conduct in seeking admission of the automatic pistol was not error.

Furthermore, admission of the gun did not prejudicially affect Wesley's substantial rights so as to deprive him of a fair trial. As discussed in detail above, the evidence presented of Wesley's guilt was overwhelming, even without admission of the firearm. Therefore, Wesley was not unfairly prejudiced by the government's actions at trial, and relief is not warranted on this ground.

### B.     *Motion for Default*

Wesley filed a motion for default judgment, alleging that the government failed to timely file a response to the court's order to show cause as to why Movant's §2255 motion should not be granted. Wesley also alleges that he was prejudiced by the government's failure to send him a copy of its response brief.

Default judgment is an extreme sanction that is disfavored in habeas cases, and some courts have even held that it is unavailable. *See Lemons v. O'Sullivan*, 54

F.3d 357, 364–65 (7th Cir.1995) ("Default judgment is disfavored in habeas corpus cases"); *Gordon v. Duran,* 895 F.2d 610, 612 (9th Cir.1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment"); *Allen v. Perini,* 424 F.2d 134, 138 (6th Cir.1970) ("Rule 55(a) has no application in habeas corpus cases").

In this case, the government filed its response ten days after it was due. Although the response was untimely, Wesley has not been prejudiced by the ten-day delay. Moreover, although Wesley may not have received the government's response brief, the government certified that it did serve Wesley with a copy and this court's Clerk of Court also mailed a copy to Wesley. Wesley's reply brief responded to the government's response brief, so he was not prejudiced. The extreme sanction of default judgment would be inappropriate under these circumstances. As such, I will deny Wesley's motion for default judgment.

### IV.   Certificate of Appealability

None of Wesley's claims merits relief. Because he has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Michael Wesley's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that Michael Wesley's motion for default judgment [# 14] is denied.

                                                                  *(signature)*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of November, 2013.